RINIO, Respondent, *v.* KESTER, Administrator, Appellant.

(No. 7,347.)

(Submitted January 11, 1935. Decided January 26, 1935.)

[41 Pac. (2d) 405.]

2

*Mr. D. W. Doyle,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Murch & Wuerthner,* for Respondent, submitted a brief; *Mr. Julius J. Wuerthner* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

Hans Kristofferson and G. B. Rinio were copartners, doing business in the town of Valier under the firm name and style of People's Meat Company. They were engaged in a general mercantile and meat business, and maintained a slaughterhouse in connection therewith. On December 2, 1929, the two partners died simultaneously. The defendant, C. H. Kester, was separately appointed administrator of both estates. He took possession of all the property of each partner and of the partnership, and treated the latter as joint property and as though each partner had owned an undivided one-half interest therein. He continued the partnership business and, in fact, acted as voluntary trustee of the partnership property from the death of the partners until February 19, 1932, when one W. B. Finlay was appointed by order of the court to act as trustee of the partnership property. Finlay was given authority to wind up the affairs of the partnership and dispose of its property, and also "to audit the books of the partnership heretofore kept by the deceased partners and by C. H. Kester since his acting as voluntary trustee in the conducting of the affairs of said partnership thereof."

The copartnership affairs have never been finally settled or adjusted. There has never been an accounting between the respective estates of the deceased partners. All of the partnership property and assets remain in the copartnership trust, and no part of it has been distributed or transferred to either estate.

4

On September 24, 1930, the defendant, acting as administrator of the Hans Kristofferson estate, entered into a contract with the plaintiff, Frederick Rinio, wherein defendant agreed to sell to plaintiff a one-half interest in certain lands which had been used by the partnership in carrying on its business. Defendant had theretofore obtained a probate court order permitting him, as administrator of the Hans Kristofferson estate, to sell the property described in this contract. This property comprised approximately ten acres of land situated in the town of Valier. One part was a lot upon which stood a building in which the partnership had carried on its meat business, and a two-acre and an eight-acre tract upon which the partnership had kept its slaughter-house and stock pens.

Under the terms of the contract, plaintiff was to pay $5,400 for an undivided one-half interest. At the time of making the contract, plaintiff made a payment to defendant of $1,800, and executed a note, payable in one year, for the sum of $1,323.12. The balance of the purchase price was represented by a mortgage standing against the property, in the sum of $2,276.88, which mortgage was to be assumed by plaintiff. Plaintiff took immediate possession of the property, and has retained possession thereof ever since. Thereafter, and subsequent to the appointment of Finlay as trustee of the partnership affairs, plaintiff was advised that the property which defendant had sold to him was partnership property; that it did not belong to the Hans Kristofferson estate, and that therefore the sale of it to him by defendant was invalid because the estate had no title to convey. Upon discovering this situation, plaintiff on June 24, 1930, made a formal demand upon defendant for a return of the $1,800 paid at the time of the execution of the contract, together with all sums subsequently paid in accordance therewith. He also at the same time tendered back to defendant all of the property covered by the contract.

Defendant refused to rescind or to accept the tender of possession. Shortly thereafter he made a written demand on plaintiff for the balance due under the terms of the contract, and

stated that he elected to declare the contract forfeited and terminated unless the balance was paid by October 8, 1932. The plaintiff then instituted this action, seeking a rescission and cancellation of the contract, a return of the payments made in accordance with the terms of the contract, and the cancellation of the $1,323.12 note, representing the balance of the purchase price.

In its findings of fact and conclusions of law the court found generally in favor of plaintiff and against defendant. It found that the sale was void and entirely without consideration; that on account of such void sale plaintiff was entitled to a return of all of the money paid by him in accordance with the contract, and that plaintiff's claim against the defendant, as administrator, was a preferred claim entitling him to be designated as a preferred creditor and to have his claim satisfied ahead of the general creditors of the estate.

The principal question presented for our determination is whether the land involved here was partnership property, or whether it was owned by the two partners individually and jointly.

Though the defendant admits that there was an existing partnership, he asserts that there is no proof to support the court's finding that any part of the property involved was partnership property. It appears from the record that the lot (designated as lot 3 of block 58) upon which the partnership business was transacted, stood on the county records in the names of the two partners jointly, and not in the partnership name. The eight-acre tract included in the contract was deeded by the Valier Townsite Company to Hans Kristofferson and G. B. Rinio. The two-acre tract was deeded to the partnership, "People's Meat Co." Plaintiff adduced testimony tending to show that all of the property in question was used by the copartnership in carrying on the partnership business; that it was treated by the partners as partnership property; that taxes, repairs, insurance, etc., were paid out of partnership funds, and that from the partnership income tax returns the partnership had deducted, as a portion of its expense,

taxes paid on the property in question. The tax assessment list for 1929 showed that lot 3 of block 58 was assessed to the individuals, and that the ten acres were assessed to the People's Meat Company—Hans Kristofferson and G. B. Rinio.

The above brief recital of facts is sufficient to demonstrate upon what the contentions of the parties with respect to the actual ownership of the property in question are based.

Defendant in his argument places considerable emphasis upon the fact that all of the land involved, with the exception of the two-acre tract, stood in the names of the individual partners, and not in the name of the partnership. He cites and relies upon section 4142, Revised Codes of 1921, which provides that a certified abstract of the title is prima facie evidence of its contents. He further contends that the mere fact that the copartnership used the property for partnership purposes did not necessarily constitute it the property of the partnership, rather than the property of the individuals. In support of his argument in this connection he cites and relies upon *Rockefeller* v. *Dellinger*, 22 Mont. 418, 56 Pac. 822, 74 Am. St. Rep. 613, *Weiss* v. *Hamilton*, 40 Mont. 99, 105 Pac. 74, and *St. Paul Mach. Mfg. Co.* v. *Bruce*, 54 Mont. 549, 172 Pac. 330. The two last-cited cases (the *Weiss Case* and the *Bruce Case*) are not in point here. The real question presented in both those cases was whether or not there was an actual partnership existing. In the instant case it is admitted that there was a partnership. The case of *Rockefeller* v. *Dellinger*, supra, is in point. It does not, however, substantiate the assertions made by defendant. The court in that case held that it made no difference in whose name the title to the property stood, except in so far as that fact tended to reveal the intention of the partners as to the true ownership of the property. "Whether property bought by one partner in his own name is partnership property depends upon the circumstances and the intention." (Mechem on the Elements of Partnership, sec. 140, p. 123; *Rockefeller* v. *Dellinger*, supra.) None of the authorities to which our attention has been directed go any further than to hold that "a deed of

realty to partners individually, if unexplained, vests in them equal undivided interests as tenants in common.'' (47 C. J. 757.)

In the present case a large portion of the property involved stands in the names of the individual partners, but there is substantial evidence tending to explain away that fact. Indeed, it appears that there is sufficient evidence upon which the court could base its finding that the property was in truth and in fact owned by the partnership. The most that can be said is that the evidence upon this point is somewhat conflicting and furnishes reasonable grounds for different conclusions. Under such circumstances, the findings of the trial court will not be disturbed on appeal. (*Bickford* v. *Bickford,* 94 Mont. 314, 22 Pac. (2d) 306; *Birdwell* v. *Three Forks Cement Co.,* 98 Mont. 483, 40 Pac. (2d) 43, and cases therein cited.)

Having found that the property in question was owned by the partnership, the trial court was correct in holding that the probate court had no right or jurisdiction to grant an order permitting defendant, as administrator of the estate of one of the partners, to sell that property. (*Mares* v. *Mares,* 60 Mont. 36, 199 Pac. 267; *Miller* v. *Mitcham,* 21 Idaho, 741, 123 Pac. 941; *In re Baxter's Estate,* 22 Ariz. 91, 194 Pac. 333; *Krueger* v. *Speith,* 8 Mont. 482, 20 Pac. 664, 3 L. R. A. 291.)

It must, then, be manifest that both plaintiff and defendant were laboring under a mistake of law, as well as of fact, when they entered into the contract for the sale of the property. They both evidently thought that the interest belonged to the estate of Hans Kristofferson, and they both believed that the probate court had jurisdiction in the matter of the sale. Such mutual mistake on the part of the parties to the contract is, under the provisions of section 7565, Revised Codes 1921, sufficient ground for permitting a rescission thereof. (See *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315.) It is plain that because of the parties' mistake with respect to the ownership, and the probate court's lack of jurisdiction to order or confirm a sale of the premises, there was such a failure of consideration as to justify a rescission under the provisions of

section 7565, supra. (See *Simeon* v. *Klenze*, 66 Mont. 341, 213 Pac. 440; *Nelson* v. *Davenport*, 86 Mont. 1, 281 Pac. 537.)

Defendant suggests that plaintiff has lost any right he may have had to a rescission because of the fact that he has remained in possession of the property. A party who desires to rescind must act promptly when he discovers the facts entitling him to a rescission. (Sec. 7567, Rev. Codes 1921.) Under the provisions of the last-cited section, it was also incumbent upon plaintiff to restore to defendant everything of value he had received under the contract, upon condition that defendant should do likewise, unless the latter was unable or positively refused to do so. The record discloses that plaintiff did tender the property back to defendant, but the latter refused to accept it or to restore to plaintiff the money he had paid under the contract. Moreover, defendant threatened to declare a forfeiture unless plaintiff paid the balance due under the terms of the contract. In addition to this, there is, as we have already observed, the further fact that defendant was not legally entitled to the possession of the property. Being partnership property, Finlay, trustee of the partnership affairs, was the proper one to assume possession of it. There is evidence to the effect that plaintiff will be called upon to pay Finlay a reasonable rental for the use of the property. Finlay testified that it would be necessary for him, as trustee, to sell this property in order to pay the costs of administering the trust. Under such circumstances, it can hardly be said that plaintiff, by remaining in possession of the property, waived his rights to rescission. Plaintiff's failure to abandon possession was no concern of defendant, because he was not entitled to possession in any event.

Defendant contends that the sale of this property was subject to the rule of *caveat emptor*. In support of this contention he cites many authorities wherein it is held that the sale of property of an estate by an administrator is governed by that rule. We may assume that this is the proper rule in the ordinary case of a sale of property by an administrator. In the instant case, however, the probate court had

no jurisdiction over the property in question. Therefore its order of sale and its confirmation of the sale were void *ab initio*. (*Pioneer Mortgage Co.* v. *Carter*, 84 Okl. 85, 202 Pac. 513; *Cline* v. *Niblo*, 117 Tex. 474, 8 S. W. (2d) 633, 66 A. L. R. 916; *Stone* v. *Elliott*, 182 Ind. 454, 106 N. E. 710; *Orchard* v. *Wright-Dalton-Bell-Anchor Store Co.*, 225 Mo. 414, 125 S. W. 486, 20 Ann. Cas. 1072; *Smith* v. *Whiting*, 55 Or. 393, 106 Pac. 791; *In re Auerbach's Estate*, 23 Utah, 529, 65 Pac. 488.)

Certainly, the rule of *caveat emptor* cannot operate so as to validate a sale that is otherwise void because the probate court lacked jurisdiction to grant the order upon which the sale was based and confirmed. (See 24 C. J. 692; 11 R. C. L. 352.)

After carefully considering the record before us and all of the objections raised by defendant, we have failed to find any error that would justify a reversal. The relief granted is appropriate and proper. Accordingly the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

Rehearing denied February 26, 1935.